UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMONJA MOORE, | ) | |
| | ) | |
| Petitioner, | ) | 19 C 2814 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| FRANK LAWRENCE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Demonja Moore, an Illinois prisoner serving a 65-year sentence for first-degree murder, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. The habeas petition is denied, and a certificate of appealability will not issue.

### Background

A federal habeas court presumes that state court factual findings are correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted). The Appellate Court of Illinois is the last state court to adjudicate Moore's case on the merits. *People v. Moore*, 2018 IL App (1st) 160308-U (Ill. App. Aug. 14, 2018) (reproduced at Doc. 13-1); *People v. Moore*, 2014 IL App (1st) 122568-U (Ill. App. June 18, 2014) (reproduced at Doc. 13-2). The following sets forth the facts as that court described them, as well as the procedural background of the state court proceedings.

On February 14, 2011, Brandon Williams walked to school with his girlfriend, Ziann Crump. *Moore*, 2018 IL App (1st) 160308-U, at ¶ 5. As they approached an intersection, Moore

1

pulled up next to them in a car, began speaking, and asked Williams if Crump was his girlfriend, and Williams responded, "What does it look like? I'm walking with her." *Ibid*. As Williams and Crump continued walking, Moore hit Williams with his car. *Ibid*. Williams walked to the driver's side and punched Moore three or four times through the window. *Id*. at ¶ 6. Moore then shot Williams in the chest, Williams ran a few steps and collapsed, and Moore drove away. *Ibid*. Crump called the police, and Williams was transported to a hospital and pronounced dead. *Ibid*. Moore was arrested, and a grand jury indicted him for first-degree murder. *Moore*, 2014 IL App (1st) 122568-U, at ¶ 5.

The case was tried to a jury. The jury watched a videotape taken from a security camera near the intersection where the shooting occurred. *Moore*, 2018 IL App (1st) 160308-U, at ¶ 7. The video shows that Moore's car bumped Williams after their initial exchange. *Moore*, 2014 IL App (1st) 122568-U, at ¶ 6. The video then shows Williams approaching the driver's side window and being shot three to four seconds later. *Moore*, 2018 IL App (1st) 160308-U, at ¶ 7.

Kevin Walton and Jeremy Head testified that they were in the car with Moore. *Id*. at ¶¶ 8, 12. Head testified that Moore carried a gun, partly hidden under his shirt. *Id*. at ¶ 12. Both witnesses generally corroborated the narrative outlined above. *Id*. at ¶¶ 8-12. Walton added that he ducked down as Williams approached and thus was unable to see some of what happened. *Id*. at ¶ 8. The prosecution introduced Walton's prior statement to an Assistant State's Attorney that Moore's driving was "normal" as he left the scene. *Id*. at ¶ 11.

The prosecutor argued to the jury, without objection, that Williams "had no duty to escape th[e] situation" and had "the absolute right[] to defend himself." *Moore*, 2014 IL App (1st) 122568-U, at ¶ 7. The prosecutor reiterated the point in rebuttal, at which point defense counsel objected and the court overruled the objection. *Id*. at ¶ 9.

The trial court instructed the jury on first- and second-degree murder and on self-defense. *Moore*, 2018 IL App (1st) 160308-U, at ¶ 17. The jury found Moore guilty of first-degree murder, and the court sentenced him to 65 years' imprisonment. *Id*. at ¶ 18. The court denied Moore's post-trial motions. *Moore*, 2014 IL App (1st) 122568-U, at ¶ 11.

Moore appealed, raising four arguments: (1) the evidence did not support his conviction because he acted in self-defense; (2) even if he did not act in self-defense, he had an unreasonable belief that he needed to shoot Williams in self-defense or he acted under a sudden and intense passion, justifying the reduction of his conviction to second-degree murder; (3) the prosecutor committed misconduct in closing argument; and (4) the trial court abused its discretion in imposing a 65-year sentence. *Moore*, 2018 IL App (1st) 160308-U, at ¶ 19. The state appellate court rejected all Moore's arguments. *Ibid*.

Moore (through counsel) filed with the Supreme Court of Illinois a petition for leave to appeal ("PLA"), which argued only that the state supreme court should clarify Illinois law regarding how far the right to defend oneself from an initial encounter extends, and at what point after a confrontation the initial victim becomes the aggressor. Doc. 13-18. The state supreme court denied review. *People v. Moore*, 20 N.E.3d 1260 (Table) (Ill. 2014).

Moore then filed a *pro se* petition for post-conviction review. Doc. 13-21 at 25-53. The petition raised these claims: "(1) newly discovered evidence established that he was actually innocent of first degree murder; (2) his trial counsel was ineffective based on counsel's misapprehension of the law of involuntary manslaughter, which influenced his decision not to testify; and (3) his appellate counsel was ineffective for failing to argue that the trial court usurped the role of the jury by not allowing the involuntary manslaughter instruction." *Moore*, 2018 IL App (1st) 160308-U, at ¶ 20. To support his actual innocence claim, Moore attached

affidavits from Walton and Head, who averred that they altered their trial testimony out of sympathy for Crump by, for example, failing to mention that Williams purposefully slowed down while walking so that Moore's car would hit him. *Id.* at ¶¶ 21, 37-38. To support his ineffective assistance claim, Moore attached his own affidavit, averring that his trial counsel did not properly explain to him the *mens rea* element of involuntary manslaughter and that, but for counsel's deficient performance, he would have testified to facts showing that his recklessness caused Williams's death and accordingly would have received an involuntary manslaughter instruction. *Ibid.* The trial court denied the post-conviction petition. *Id.* at ¶ 22. Moore filed a notice of appeal, and the appellate court appointed counsel to assist him. Doc. 13-21 at 110. The appellate court affirmed. *Moore*, 2018 IL App (1st) 160308-U, at ¶¶ 22, 43.

Moore's counsel filed a PLA with the Supreme Court of Illinois, arguing that the appellate court violated state law by relying on credibility determinations in rejecting Moore's ineffective assistance of counsel claim. Doc. 13-27. In addition, Moore filed a *pro se* PLA arguing that "state witnesses conspire[d] to present false testimony" and that the existence of that conspiracy was "newly discovered evidence" justifying relief. Doc. 13-28 at 5. The state supreme court denied review. *People v. Moore*, 116 N.E.3d 907 (Table) (Ill. 2019).

## Discussion

### I. Claims One and Two

Moore's first two grounds for federal habeas relief claim that: (1) the evidence was insufficient to support the verdict; and (2) his trial counsel was ineffective in failing to explain to him that he had to introduce some evidence of recklessness to be entitled to an involuntary manslaughter instruction. Doc. 1 at 8-15. The Warden contends that Moore procedurally defaulted those claims by failing to fairly present them to the Illinois courts. Doc. 14 at 5-10.

A federal habeas claim is "procedurally defaulted when a petitioner fails to 'fairly present' [the] claim to the state courts." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (internal quotation marks omitted). "To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Ibid*. (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). That means that the petitioner, on either direct or post-conviction review, must have "present[ed] the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012). Accordingly, "[a] procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted). For habeas petitioners in Illinois, exhaustion requires presenting the claim to the Supreme Court of Illinois. *See O'Sullivan*, 526 U.S. at 845-46.

Moore's direct review PLA argued only that the state supreme court should clarify Illinois self-defense law, and made no argument concerning the sufficiency of the evidence or the adequacy of trial counsel. Doc. 13-18. Moore's counseled post-conviction PLA argued only that the appellate court violated Illinois law when it relied on credibility determinations to dismiss his ineffective assistance of counsel claim at the first stage of his post-conviction appeal. Doc. 13-27 at 12-14. The post-conviction PLA did not present the state supreme court with a full and fair opportunity to address the underlying federal ineffective assistance claim. "[T]he argument … that [a] state appellate court wrongly applied a state rule," even where the appellate court "cited [that rule] as a central reason for rejecting" a federal claim, "is ordinarily not a matter of concern for a federal habeas court." *Hinesley v. Knight*, 837 F.3d 721, 735-36 (7th Cir.

2016). It follows that Moore procedurally defaulted his insufficient evidence and ineffective assistance habeas claims.

Moore appears to argue that his proposed *pro se* post-conviction PLA—which he styled a "supplemental" PLA—raised the ineffective assistance of counsel claim he presents here. Doc. 22 at 7-11. It did not. The supplemental PLA argued only that the "state witnesses conspire[d] to present false testimony" and that the existence of that conspiracy was "newly discovered evidence." Doc. 13-28 at 5. The closest Moore came to arguing ineffective assistance was in his motion for leave to file the supplemental PLA, which stated that "appointed appellate counsel failed to raise all potentially meritorious issues before" the appellate court. *Id*. at 2. Even if Moore's motion could have fairly presented claims to the state court, *but cf. People v. Bell*, 100 N.E.3d 177, 182 (Ill. App. 2018) ("It has long been held a defendant has no authority to file *pro se* motions when he or she is represented by counsel."), his offhand complaint about counsel's performance concerned his *appellate* counsel's briefing choices—not his *trial* counsel's advice, which is the subject of his federal habeas claim. Accordingly, Moore's *pro se* motion and post-conviction PLA does not save his ineffective assistance claim from procedural default.

A habeas petitioner may overcome a procedural default by: (1) demonstrating cause and prejudice; or (2) showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Moore satisfies neither ground for overcoming his procedural defaults.

"Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (internal quotation marks and citations omitted). Moore makes no effort to justify the procedural default of his insufficient evidence claim under the cause and prejudice exception, nor can the court identify anything in his briefing that could be construed as advancing such an argument. As for the ineffective assistance claim, while Moore's arguments on the merits of that claim might also go to the prejudice prong of the cause and prejudice inquiry, the court cannot identify anything in his briefing that offers a cause for failing to present that claim in any of his PLAs. Moore has accordingly forfeited the argument that the procedural default of his first two habeas claims can be overcome under the cause and prejudice standard. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (holding that the petitioner bears the burden of establishing an exception to procedural default).

"The fundamental miscarriage of justice exception [to procedural default] requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Smith*, 598 F.3d at 387 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *see also McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) ("Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is 'actually innocent' of the crimes of which he was convicted."). "To pass through the actual-innocence gateway to a merits review of a procedurally barred claim, the petitioner must have new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial, and must persuade the district court that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (internal quotation marks and citations omitted).

Moore argues that new evidence demonstrates his innocence, pointing to affidavits from Head and Walton that he contends show he acted in self-defense or was guilty of only second-degree murder.  Doc. 13-21 at 68-76.  Walton's affidavit avers that he lied in his grand jury testimony out of sympathy for the victim's girlfriend, Crump, *id.* at 72, and Head avers that Walton persuaded him to "omit certain small things" from his trial testimony, *id.* at 68.  Both Head and Walton would now testify that Moore carried a gun on the day of the shooting for protection in a dangerous neighborhood; that Williams was known to be "insanely jealous" about Crump; that Williams purposefully "slowed up walking" so Moore's car would bump him; that after bumping Williams, Moore was concerned Williams was hurt; and that Moore shot Williams as a "last resort" to protect himself after Williams violently attacked him.  *Id.* at 69-75.

As an initial matter, the two affidavits are of questionable probative value.  In addition to the general skepticism with which the law treats recantations, *see Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993) ("It is a truism that our courts treat recantations with skepticism.")—if the affidavits' modest deviations from and additions to Head's and Walton's testimony even amount to recantations—the facts that three years had passed between trial and their execution of the affidavits and that they are Moore's friends further reduced the weight jurors would likely give their new testimony.  That alone suggests that Moore has not offered the kind of "reliable evidence"—"exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," *Schlup*, 513 U.S. at 324, or "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs," *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)—that generally is necessary for a habeas petitioner to pass through the actual innocence gateway.

Even if fully credited, the affidavits do not provide evidence that would probably have led a reasonable jury to acquit Moore of first-degree murder. To the extent Head and Walton would have testified about events visible on the camera footage—for instance, whether Moore bumped Williams with his car, or whether Williams slowed down to allow Moore's car to bump him—they could not have provided much insight beyond what jurors gleaned from viewing the video themselves. Indeed, the state appellate court already determined that the video alone could lead a reasonable juror to conclude that Moore was the aggressor. *Moore*, 2014 IL App (1st) 122568-U, at ¶ 17. The appellate court also determined that "[t]he trier of fact could conclude, from the fact that Moore had a gun in his lap, under a shirt, and from the rapidity of the response, that Moore prepared himself to shoot before he initiated the aggression by bumping Williams with his car." *Id*. at ¶ 20. And given that, the appellate court added, "[a] reasonable trier of fact could find that Moore did not prove he believed he needed to shoot Williams in self-defense." *Ibid*. This court will not second guess the appellate court's view of the reasonable inferences the jury could have drawn from the evidence presented at trial, and in fact will go further to say that the evidence of Moore's guilt of first-degree murder was exceptionally strong. Accordingly, in deciding whether Moore's new evidence satisfies the actual innocence gateway, the court will limit itself to considering the extent to which the new evidence undermines the evidence presented at trial. *See Coleman v. Lemke*, 739 F.3d 342, 351 (7th Cir. 2014) (in assessing an actual innocence gateway argument, deferring under § 2254(e)(1) to the state post-conviction trial court's factual findings concerning a witness's credibility).

Testimony that Moore brought the gun with him out of fear for his safety and that Williams was known to be especially jealous about Crump might have provided marginal assistance to Moore's defense. But that evidence, even if credited by the jury, would not have

undermined the content of the video and Moore's rapid and violent response to Williams's actions—evidence that amply supported the first-degree murder verdict. And that evidence surely is not the type of decisive evidence sufficient to show on federal habeas review that it is "more likely than not that no reasonable juror would have convicted" Moore. *Jones*, 842 F.3d at 461 (internal quotation marks and citations omitted). Accordingly, Moore's new evidence does not allow him to pass through the actual innocence gateway. *See Blackmon v. Williams*, 823 F.3d 1088, 1101-02 (7th Cir. 2016) (holding that testimony from two new witnesses that the petitioner was not the shooter was "not enough to meet the demanding *Schlup* standard for actual innocence," even though "no physical evidence tied him to the murder, and the State introduced no evidence of a motive," where two other eyewitnesses had testified that he was the shooter); *Gladney v. Pollard*, 799 F.3d 889, 899 (7th Cir. 2015) (holding that new evidence permitting a "possible inference but by no means a required [inference]" of the petitioner's innocence was insufficient to meet his "heavy burden" of showing that "it is likely that *no* reasonable juror would have convicted").

## II.     Claim Three

Moore's third ground for relief claims that the above-referenced newly discovered evidence shows that Head and Walton conspired to omit from their trial testimony factual details establishing that he is actually innocent of first-degree murder. Doc. 1 at 16-19. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017). That said, "[w]hether the constitutional guarantee of due process supports independent claims of actual innocence without any other constitutional violation remains open to debate." *Ibid*.

10

The court need not resolve that question here, as the Seventh Circuit has counseled that "[i]f the federal courts … recognize freestanding constitutional claims of actual innocence … it is clear that evidence of innocence will need to meet an extraordinarily high threshold." *Ibid.* (internal quotation marks omitted). Because, as shown above, Moore's newly discovered evidence does not meet the standard required to excuse procedural default via the actual innocence gateway, the evidence surely does not meet the "extraordinarily high threshold" a freestanding claim of actual innocence would demand. *See Schlup*, 513 U.S. at 315-16 (explaining that, when "a claim of innocence is … not itself a constitutional claim, but instead a gateway through which a habeas petitioner [attempts to] pass to have his otherwise barred constitutional claim considered on the merits," the petitioner's "evidence of innocence need carry less of a burden") (internal quotation marks omitted). It follows that Moore's freestanding actual innocence habeas claim fails.

## Conclusion

Because Moore's claims are procedurally defaulted or substantively meritless, his habeas petition is dismissed. Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted).

11

This court's denial of Moore's habeas petition relies on settled precedent and the application of this precedent to his petition does not present difficult or close questions, and so the petition does not meet the standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

September 23, 2020

_____
United States District Judge